IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERRI B. L., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI,[1] Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 21-cv-00278-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Sherri B. L. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the [administrative] record as a whole, including

2

anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Background and Procedural History

Plaintiff applied for Title II disability benefits on June 11, 2019, with a protective filing date of June 10, 2019. (R. 12, 181-82.) In her application, Plaintiff alleged she has been unable to work since February 1, 2015, due to conditions including back injury, depression, sleep deprivation, and heart conditions. (R. 181, 199.) Plaintiff was 51 years old at the time of the ALJ's decision. (R. 26, 181.) Plaintiff has a high school education and past relevant work as a hairdresser, new accounts clerk, teller, accounting clerk, EMT, and radiation monitor. (R. 51-52, 200.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 77-79, 85-92.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on January 21, 2021. (R. 33-54, 93-94.) The ALJ then issued a decision denying benefits and finding Plaintiff not disabled. (R. 12-26.) The Appeals Council denied review on May 12, 2021 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff timely filed this appeal on July 9, 2021 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

## III.   The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2019. (R. 14.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of

February 1, 2015, through her date last insured. (*Id.*) At step two, the ALJ found Plaintiff had the severe impairments of degenerative disc disease and cardiac arrhythmia. (*Id.*) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 14-15.)

After considering certain evidence, the ALJ concluded that Plaintiff had the RFC to perform "less than the full range of sedentary work as defined in 20 CFR 404.1567(a)" with the following limitations:

> [Claimant] was able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, sit 6 hours in an 8-hour workday, stand and/or walk 4 hours in an 8-hour workday, occasional[ly] climb ramps, stairs, balance, stoop, kneel, no crouch or crawl and no climbing ladders, ropes, scaffolding, unprotected heights, dangerous machinery, or extreme heat or humidity, defined as ranging from 68 to 76 degrees Fahrenheit and 40 to 60 percent humidity.

(R. 15.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 15-25.) At step four, the ALJ found Plaintiff capable of performing her past relevant work as an accounting clerk as it is generally performed. (R. 25-26.) Accordingly, the ALJ concluded Plaintiff was not disabled through the date last insured. (R. 26.)

## IV.  Issues

Plaintiff raises two allegations of error in her challenge to the denial of benefits: (1) the ALJ failed to consider the medical opinion of Dr. Basmah Jalil (ECF No. 16 at 7-10); and (2) the ALJ's evaluation of Plaintiff's symptoms was not supported by substantial evidence (*id.* at 10-15). The Court agrees that, in the case at hand, the ALJ was not entitled to ignore <u>all</u> evidence beyond the date last insured—including Dr. Jalil's opinion—and does not reach Plaintiff's other argument.

## V.  Analysis

Plaintiff's first allegation of error relates to the ALJ's failure even to consider (much less discuss) an April 2020 "medical opinion" of rheumatologist Dr. Basmah Jalil. As

4

noted below, this appears to stem from the ALJ's general approach to the record before him, which was to ignore all evidence that post-dated Plaintiff's date last insured of December 31, 2019. Although not part of the ALJ's findings or reasoning, the Commissioner disputes whether Dr. Jalil offered a medical opinion as that term is used in the applicable regulations.

The Court finds the ALJ's overall approach—to ignore all post-last-insured evidence—was improper in this case. As a result, the ALJ's failure to mention Dr. Jalil's statement, which was significant probative evidence contradicting the ALJ's findings, would be an error, even if Dr. Jalil had not offered a medical opinion. However, the Court also finds that Dr. Jalil <u>did</u> offer a medical opinion, the persuasiveness of which the ALJ was required to discuss. The Court further finds the ALJ's error was not harmless.

### A.   The Record and the ALJ's Decision

As noted above, Plaintiff alleged a disability onset date of February 1, 2015. Her date last insured was December 31, 2019. In his decision, ALJ Christopher Hunt walked through his review of Plaintiff's testimony and took care—as he should—to try and focus on symptoms and limitations faced by Plaintiff while insured. (R. 15-17.) The ALJ then went through the record evidence. (R. 17-24.) ALJ Hunt specifically noted that he considered "the evidence during the period from February 1, 2015 (alleged onset date) through December 31, 2019 (date last insured)" (R. 24), and he specifically found that "during the relevant period" there were no opinions from any medical providers indicating Plaintiff had any limitations greater that those he found (R. 25).

A review of the record indicates that the ALJ, indeed, only considered evidence from February 1, 2015, through December 1, 2019. The last medical record cited by the ALJ is a December 19, 2019, treatment note. (R. 23 (citing R. 888).) But, the record contained numerous other medical records, from January 15, 2020, onwards. (R. 618-

5

35, 656-63, 665-73, 679-80, 848-56, 892-905, 908-924, 926-44, 946-54, 958-65, 969-75, 977-78.)

### B. Dr. Jalil's Statement

Particularly relevant to this appeal, those records include Plaintiff's treatment with Dr. Jalil. In January 2020, Plaintiff's primary care provider, Vicki Hammons, APRN-CNP, ordered labs for chronic fatigue. (R. 673.) These labs showed Plaintiff was ANA positive, and Ms. Hammons referred Plaintiff to Dr. Jalil for a rheumatology new patient consult. (R. 638, 644.) Plaintiff's first appointment with Dr. Jalil was on March 10, 2020—70 days after her date last insured. (R. 638.) At that visit, Dr. Jalil took Plaintiff's statement of her medical history—alleging pain and fatigue for 15 years and worsening in the past three years—and conducted a physical examination. (R. 638-644.) In the exam, Dr. Jalil found multiple fibromyalgia tender points present and assessed Plaintiff with fibromyalgia, describing it as a "very active disease." (R. 644-45.) Dr. Jalil also ordered additional lab tests, including for Westergren Sedimentation Rate, rheumatoid factor, and other blood tests. (*Id.*)

On April 20, 2020, Plaintiff returned for a follow-up visit with Dr. Jalil. (R. 908.) Dr. Jalil's physical exam again showed multiple fibromyalgia tender points, and Dr. Jalil again assessed Plaintiff with "very active fibromyalgia." (R. 679, 912, 916.) Dr. Jalil also reviewed the results of the March lab tests and appeared to rule out other causes for Plaintiff's pain. (R. 916.)

Additionally, on April 20, 2020, Dr. Jalil completed a *"Medical statement regarding fibromyalgia for Social Security disability claim."* (R. 680.) In that form, Dr. Jalil signed a statement indicating that, "In my medical opinion this patient has the following limitations and abilities (Circle answers)," after which she circled that Plaintiff could stand 15 minutes at one time, lift five pounds occasionally and frequently, and could

6

frequently raise her left and right arms over shoulder level. (*Id.* (emphasis omitted).) Dr. Jalil also circled answers indicating that Plaintiff could work zero hours per day and sit no amount of time; that she could not stand or sit during a workday; and that she could never bend or stoop. (*Id.*) Interlineated with these answers, however, was the following handwritten notation: "Answers based on patient's own answers. Pt not worked since 2015." (*Id.*[2])

### C. Dr. Jalil's Statement was a Medical Opinion

Plaintiff argues the ALJ particularly erred by failing to consider Dr. Jalil's medical opinion under 20 C.F.R. § 404.1520c. (ECF No. 16 at 7.) The Commissioner, however, asserts, "Plaintiff's argument is misplaced as Dr. Jalil did not offer [her] medical opinion in this case." (ECF No. 21 at 8-9.) Rather, the Commissioner classifies Dr. Jalil's *Medical statement* as "merely a questionnaire completed by Plaintiff" containing nothing more than Plaintiff's own beliefs as to her functional limitations. (*Id.* at 9.) The Court, therefore, first addresses whether Dr. Jalil's statement is a "medical opinion" subject to the requirements of § 404.1520c.

A medical opinion is a statement from a medical source[3] about what a claimant can still do despite their impairment and whether they have one or more impairment-related limitations or restrictions in their abilities to perform the physical, mental, or other demands of work activities, or in their ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). The physical demands of work activities include sitting,

---

[2] Dr. Jalil also noted, "Plaintiff may need full functional assessment by a qualified physical therapist or disability specialist." (R. 680.)

[3] The parties do not dispute that Dr. Jalil is an acceptable medical source. *See* 20 C.F.R. § 404.1502(a)(1) (acceptable medical source includes a licensed physician).

standing, lifting, and other physical functions, as well as manipulative or postural functions like reaching, handling, stooping, or crouching. *Id.* § 404.1513(a)(2)(i).

On its face, Dr. Jalil's *Medical statement* meets this definition of a medical opinion. *Id.* After noting Plaintiff's diagnosis, symptoms, and related medical problems (R. 679-80),[4] Dr. Jalil explicitly offered her "medical opinion" about Plaintiff's "limitations and abilities," which included multiple physical demands of work activities—Plaintiff's ability to stand and sit at one time, stand and sit during a workday, lift on an occasional and frequent basis, bend, stoop, and raise her arms over her shoulders (R. 680).

Dr. Jalil's additional handwritten notes—including "Answers based on patient's own answers"—do not automatically transform her statements into something other than an opinion. Dr. Jalil expressly termed these findings—which comply with the form required by 20 C.F.R. § 404.1513—as medical opinions and signed her name to them. (*Id.*) If the ALJ had evaluated the opinion at all, Dr. Jalil's handwritten note would go to the supportability of the opinion, not whether it was an opinion in the first place. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (concluding it was appropriate for the ALJ to discount a medical opinion in large part because it was based on a "single, subjective report" given by the plaintiff).[5] As discussed below, it is the ALJ's duty—not this Court's—to consider the supporting explanations provided by a medical source.

---

[4] Noting that Plaintiff had (1) a history of widespread pain for three or more months; (2) pain in 11 or more pressure points; (3) irritable bowel syndrome; (4) tension headaches; (5) parenthesis; (6) sleep disturbance; (7) chronic fatigue; and (8) memory loss. (R. 680.)

[5] Although *Flaherty* was decided under prior regulations, it involved a similar analysis of the "supportability" of a medical opinion. *See* 20 C.F.R. § 404.1527(d)(3) (2006).

8

### D. The ALJ Was Required to Consider Dr. Jalil's Statement, if Relevant

When considering a claimant's RFC (and, therefore, ultimate disability), the ALJ makes an assessment based on "all the relevant evidence" in the record. 20 C.F.R. § 404.1545(a)(1). Evidence means "anything" the claimant or anyone else submits, or that the ALJ obtains, that relates to the claim. *Id.* § 404.1513(a). Categories of evidence include not only medical opinions, but also objective medical evidence, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings. *Id.* § 404.1513(a)(1)-(5). The evidence considered includes a medical source's statement about what a claimant can still do, "whether or not they are based on formal medical examinations." *Id.* § 404.1545(a)(3).

Where the particular piece of evidence is a "medical opinion," the ALJ must consider and discuss that evidence in a specific way.[6] The ALJ evaluates the persuasiveness of medical opinions by considering the following factors: (i) the supportability of the opinion; (ii) the consistency of the opinion; (iii) the medical source's relationship with the claimant; (iv) the medical source's specialization; and (v) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(b)-(c).

While the ALJ considers all five factors, he generally must discuss only two—supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability refers to

---

[6] This does not, however, mean the ALJ could ignore Dr. Jalil's *Medical statement* if it were relevant non-opinion evidence. "The record must demonstrate that the ALJ considered all of the evidence," even if the ALJ does not have to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ must discuss the evidence supporting his decision, the uncontroverted evidence upon which he chooses not to rely, and any "significantly probative evidence" he rejects. *Id.* at 1010. As discussed below, Plaintiff's fibromyalgia diagnosis and related examination findings or opinions were significantly probative evidence relating to the consistency of Plaintiff's symptoms and her RFC. In this case, it appears the ALJ did not consider any of Dr. Jalil's examination or other records, including her *Medical statement*.

9

information internal to the medical source offering the opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his . . . medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* § 404.1520(c)(1). Consistency, meanwhile, is external: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. *Id.* § 404.1520c(b)(2).

Because the *Medical statement* was a medical opinion, the ALJ would generally be obligated to discuss it in accordance with 20 C.F.R. § 404.1520c. No party disputes that the ALJ failed to do so. (R. 12-26; *see also* ECF No. 16 at 7-10; ECF No. 21 at 8-10.) The only question remaining before the Court is whether the ALJ's failure was justified or harmless.

### E. The ALJ's Failure to Consider Dr. Jalil's Statement was neither Justified nor Harmless

As noted above, from the ALJ's statements in his decision, it appears he disregarded all medical opinions (and other medical evidence) if such evidence simply fell outside Plaintiff's last insured date. (*See, e.g.*, R. 24 (considering evidence from February 1, 2015, through December 31, 2019); R. 25 (referring to the "relevant period").) In her opening brief, Plaintiff argues the ALJ should have considered Dr. Jalil's *Medical statement*, even though it came after the date last insured. (ECF No. 16 at 8-9.) The Commissioner does not respond to this argument.

The Commissioner does, however, argue that any error committed by the ALJ was harmless, because Dr. Jalil's opinion was merely a reflection of Plaintiff's own statements

of her symptoms, which the ALJ fully considered and properly discounted. (ECF No. 21 at 9-10.)

The Court will address each argument in turn.

### 1. Dr. Jalil's statement was relevant, and the ALJ was not justified in ignoring it.

In Title II cases, a claimant must establish her disability prior to the expiration of her insured status. *Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). Courts are clear, however, that evidence generated after the date last insured—such as medical opinions—may be considered when related to the insured period. *See White v. Berryhill*, 704 F. App'x 774, 779 (10th Cir. 2017) (unpublished);[7] *see also Hardman v. Barnhart,* 362 F.3d 676, 678, 681 (10th Cir. 2004) (remanding for ALJ to consider MRI performed over one year after date last insured). This is because, while the evidence or opinion might have been authored outside the last insured date, it may shed light on the nature and severity of the claimant's condition during the relevant period. *See Chitwood v. Comm'r of Soc. Sec. Admin.*, No. CIV-19-092-KEW, 2020 WL 5757673, at *3 (E.D. Okla. Sept. 28, 2020) ("Medical records that predate or postdate the insured period, however, may constitute indirect evidence of a claimant's condition during the insured period and, therefore, should also be considered."). As such, if an ALJ refused to consider medical evidence simply because it dated from after the insured period, this would be "legal error." *Miller*, 99 F.3d at 977.

Retrospective diagnosis and subjective testimony can be used to diagnose a physical condition, but this type of evidence alone cannot justify an award of benefits. *See Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991); *see also Potter v. Sec'y of Health &*

---

[7] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

*Hum. Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990) ("It is true that a treating physician may provide a retrospective diagnosis of a claimant's condition."). Instead, the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status. *Flint*, 951 F.2d at 267. Or, to put it another way, the ALJ must first determine whether the claimant had a medically determinable impairment. *See* 20 C.F.R. § 404.1521. Then, the ALJ must determine whether the impairment(s)—and any related symptoms—caused physical or mental limitations that affected what the claimant could do in a work setting and, based on this finding, determine the claimant's RFC. *See id.* § 404.1545(a)(1).

To determine whether fibromyalgia is a medically determinable impairment, the ALJ will look to see whether a licensed physician has diagnosed the claimant with fibromyalgia; whether the physician provided evidence of one of two possible sets of criteria;[8] and whether the diagnosis is not inconsistent with the other evidence in the claimant's case record. SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012). Once fibromyalgia is determined to be a medically determinable impairment, the ALJ then evaluates the intensity and persistence of the claimant's pain or other symptoms and determines the extent to which those symptoms limit the claimant's capacity to work. *Id.* at *5. The ALJ looks at all the medical and non-medical evidence in the record in

---

[8] The first set of criteria are (1) a history of widespread pain—that is, pain in all quadrants of the body (right/left and above/below the waist) and axial skeletal pain that has persisted for at least three months; (2) at least 11 positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms have been excluded, e.g., through laboratory testing. *Id.* at *2-3. The second set of criteria are (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions—especially those of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders have been excluded. *Id.* at *3.

determining both the severity of an impairment of fibromyalgia and in assessing the RFC. *Id.* at *4 & 6.

On the record before him, the ALJ <u>could</u> have found Plaintiff to have had a medically determinable impairment of fibromyalgia that began before the date last insured.

> [E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it . . . may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.

*Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479 (10th Cir. 1993) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 42 (2d Cir. 1972)); *cf. Ogden v. Astrue*, No. 10-cv-02450-REB, 2012 WL 917287, at *4 (D. Colo. Mar. 19, 2012) (finding ALJ erred in according no weight to a treating physician's post-insured opinion which, had it properly been weighed, would have resulted in the ALJ finding an impairment was severe during the insured period).[9]

Plaintiff received an initial medical diagnosis of this chronic disease a little over two months after her date last insured. This diagnosis followed a taking of Plaintiff's history, where she reported worsening pain and fatigue over three years;[10] a physical exam

---

[9] *See also* SSR 12-2p, at *6 ("For a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane.")

[10] This history is consistent with the medical evidence during the 2015-2019 period when Plaintiff was insured. During that period—in addition to Plaintiff's many, many reports of pain, fatigue, and related impairments—physical exams showed pain or tenderness in the upper back radiating to the chest (R. 343); in the neck, cervical back, upper back, thoracic, lumbar back, lower back, and lower vertebral areas, as variously described (R. 343, 364, 377, 392, 464, 466, 469); lower extremities (R. 381); lower vertebral area (*id.*); right hand (R. 457); and abdominal area (R. 463). Plaintiff was also assessed or diagnosed with fatigue or chronic fatigue (R. 331, 411, 447, 461), chronic pain (R. 345, 365, 378, 382, 392), breast pain (R. 451, 655), and abdominal pain or generalized abdominal pain (R. 463, 591, 821).

13

showing 11 tender points; and a review of labs (and the ordering of more labs). (R. 638-46.) The next month, the diagnosis appears to have been confirmed following the additional lab results (R. 908-17), at which point Dr. Jalil also stated Plaintiff had a history of widespread pain for "three or more months," as well as other signs and co-occurring conditions (R. 679-80).[11]

Had the ALJ found a medically determinable impairment of fibromyalgia existing during the insured period, the ALJ further could have found limitations resulting from that impairment based not only on the medical records, but also on Plaintiff's own symptom reports,[12] the third-party report of her husband,[13] <u>and</u> Dr. Jalil's statement of Plaintiff's functional capabilities just a few months later. As a result, the post-insured evidence was relevant to the ALJ's determinations as to Plaintiff's impairments and related limitations during the insured period, and the ALJ erred in completely ignoring the existence of this evidence.

Of course, that evidence is relevant does not mean an ALJ could only have interpreted it in one way. The ALJ also could have considered the evidence and found it insufficient to show that Plaintiff had the impairment of fibromyalgia before December

---

[11] Again, this would be consistent with the medical records from the 2015-2019 period, which included physical exams showing moderate colonic spasm consistent with irritable bowel syndrome (R. 829), as well as assessments or diagnoses of chronic fatigue (R. 331, 411, 447, 461), abdominal pain (R. 463, 591, 821), irritable bowel syndrome (R. 829), anxiety and depression (R. 447, 458, 461), sleep disorder (R. 458-59, 461), and gastroesophageal reflux disease (R. 677). Plaintiff also complained to providers during this time of hair loss and muscle weakness. (R. 322.)

[12] Plaintiff symptom reports include not only her testimony, as outlined in the ALJ's decision, but also her function report (R. 222-29), as well as the numerous statements she made to medical providers regarding, for example, her pain interfering with lifting, walking, sitting, standing, daily activities, and sleeping (R. 343, 376, 380, 391) and preventing her from standing long enough to apply makeup (R. 376).

[13] Plaintiff's husband reported that due "to sleep deprivation, Sherri can't remember things like doctor's appointments . . . ." (R. 208.)

31, 2019. Or, the ALJ might have found the impairment existed, but still found Plaintiff's symptoms exaggerated or that Plaintiff's resulting limitations did not preclude her prior relevant work. Whichever way the ALJ decided the facts, he would have been entitled to deference and his findings upheld if supported by substantial evidence. *See, e.g.*, *Martinez v. Saul*, No. CV 19-489 GJF, 2020 WL 1308667, at *8-9 & n.18 (D.N.M. Mar. 19, 2020) (finding no error where ALJ considered post-insured evidence but still found no functional limitation warranted).

The problem is, in this case, the ALJ did not consider the relevant evidence and did not make any determinations. This was an error. As noted below, the error was not harmless.

### 2. The ALJ's error was not harmless.

The harmless error doctrine is applied cautiously in the context of social security disability cases. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). Even so,

> it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

*Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). To the extent any "harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action . . . ." *Id.* (emphasis added). The undersigned "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). Specifically, courts may not engage in a "post hoc effort to salvage the ALJ's decision [that] would

require [it] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen*, 357 F.3d at 1142.

The Commissioner argues that any error was harmless because Dr. Jalil's opinion was based on Plaintiff's subjective complaints, which the ALJ discounted. (ECF No. 21 at 9-10.) This argument is unpersuasive. When discounting Plaintiff's pain-related symptoms, the ALJ focused on her degenerative disc disease—including imaging, the lack of a need for back surgery, use of pain medication for her back, and lack of physical therapy. (R. 25.) The ALJ similarly found that Plaintiff's heart-related ailments were stable prior to December 31, 2019. (*Id.*) These bases for discounting Plaintiff's claims of pain, fatigue, and other symptoms would not necessarily have applied had the ALJ properly considered the evidence that Plaintiff may have been suffering from fibromyalgia and related limitations during the insured period. *Cf. Ogden*, 2012 WL 917287, at *5 ("By failing to properly assess [the post-insured medical] opinion and address the medical evidence supporting plaintiff's claims, the ALJ improperly dismissed plaintiff's testimony as not credible."). The Court, therefore, cannot find the ALJ's symptom analysis would necessarily have been the same had the ALJ not erred in disregarding relevant evidence.

Moreover, because the ALJ failed to discuss Dr. Jalil's opinions in any way—much less find them unpersuasive for the reasons suggested by the Commissioner—any attempt by the Court to provide reasons to discount them would be a post hoc rationalization. It would be rank speculation for this Court to find the ALJ would necessarily have discounted Dr. Jalil's opinion and attendant records had he considered them.

Finally, the Court must not lose sight of the ultimate question of harmless error—can the Court confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matters in any other way than the ALJ

16

did here? For the reasons stated above, this Court cannot. The ALJ's error is not harmless, and the Commissioner's decision must be reversed.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 26th day of August, 2022.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT